MAYOR AND ALDERMEN OF KNOXVILLE *v.* J. F. J. LEWIS.

CONSTITUTIONAL LAW. The act of the General Assembly, 1881, entitled: "An act to provide more just and equitable laws for the assessment and collection of revenue for State and county purposes, and to repeal all laws now in force whereby revenue is collected for the assessment of real estate, personal property, privileges and polls," is obnoxious to the Constitution, Article II, section 17, and therefore void. It provides for the collection of municipal taxes in the body of the act, while no reference is made to same in title.

FROM KNOX.

Appeal from the Circuit Court of Knox county. W. B. STALEY, Ch., presiding by interchange.

L. A. GRATZ for Knoxville.

JAMES COMFORT for Lewis.

Mayor and Aldermen of Knoxville *v.* Lewis.

FREEMAN, J., delivered the opinion of the court.

This is an agreed case, presenting the question whether the clerk of the county court of Knox county is authorized to collect the municipal taxes imposed by the city on privileges. The clerk is doing it, and the corporation claims its recorder is the officer authorized to do it by law. An agreed case is made raising this question for decision.

A short review and summary of the acts of the Legislature bearing on this question will present as definitely the evil intended to be remedied by the Constitution of 1870, Article 2, Section 17, as any case we have seen. That article is, "No bill shall become a law which embraces more than one *subject*, that subject to be expressed in the title. *All acts* which *repeal, revive* or *amend former laws shall* recite in their caption, or *otherwise,* the title or substance of the law repealed, revived or amended."

The doctrine of implied repeal under this section, after much contest, has been established as the view of the majority of this court, and to that the writer of this opinion yields obedience. It stands on the ground that where there is an affirmative enactment laying down definitely the new rule that the evil of want of notice of the law repealed by the Legislature and the public does not arise, and therefore a liberal construction of the clause may be permitted, and the implied repeal held not forbidden by the Constitution.

But while we have adopted a most liberal con-

struction of the clause of the Constitution (one that the writer of this opinion thinks went beyond the intent and meaning of the language used), yet we have always felt bound to hold that the article did fix limits upon legislative action, and when these limits were passed, it is an imperative duty to declare the act unconstitutional and a nullity.

On this principle, in the case of the *State* v. *McCann*, 4 Lea, 2, that the title of an act, "An act to regulate and equalize the salaries of certain public officers, did not, and could not properly include an independent provision authorizing the Comptroller of the State to employ a clerk at a salary of one thousand dollars," and for this, among other reasons, the act was held unconstitutional. It was clearly a subject not indicated by the title. The principle on which this was done was, cited from the opinion of Chief Justice Nicholson in the case of *Cannon* v. *Mathis*, 8 Heis., 518: "The command," he says, "is positive that no law shall embrace more than one subject, and it is equally positive that the subject is to be or shall be expressed in the title. To constitute a valid law under this provision the bill must not embrace one subject alone, but that subject *must* be embraced in the title." This is as accurate a statement of the plain meaning of the language o the article as can ever be given. To it laws must be required to conform, or the constitutional requirement goes for nothing.

In that opinion we looked to the main provisions of the bill as showing what was understood by the

Legislature as being the purpose intended to be ex-expressed in the title, and containing a legislative exposition of the subject therein embraced, page 20.

The title of the act of 1881, under which it is claimed the clerk has the right to collect municipal taxes on privileges laid by the ordinances of the city is as follows: "An act to provide more just and equitable laws for the assessment and collection of revenue for *State* and *county* purposes, and to repeal all laws now in force whereby revenue is collected for the assessment of real estate, personal property, privileges and polls.

The last clause might probably be treated as surplusage, under the doctrine of implied repeals, as now held by this court, so far, at least, as the affirmative provisions of the act of 1881 are in conflict with former laws on the same subject.

The language of the title is, however, plain and unmistakable that the subject of the enactment was to embody in one act all laws for the assessment and collection of revenue for *State* and *county* purposes, and to repeal all laws then in force providing for the assessment and collection of revenues for these enumerated purposes. If there are provisions in this law for assessment and collection of revenue for any purpose, not a State or a county purpose, then it is not expressed in the title, unless we shall reverse the rule that the expression of one thing, or a series of particulars should exclude others not so expressed, and hold that the expression of one thing, or a series of particulars, shall include another thing not expressed.

On looking to the body of the act we find that up to the fiftieth section every provision is in strict accord with the purpose expressed in .the title.

Sections 17, 18, 19, 20, 21 and 22 relate to the subject of privilege taxes. We notice them: Section 17 provides that no merchant shall commence and continue business in any county of this State without obtaining license from the clerk of the county court of such county. Section 18 requires a bond to be executed, to be approved by the clerk of the county court, conditioned that he render to the clerk issuing the license at the end of twelve months a true statement of the capital invested, and pay the tax thereon. Section 19 requires if he continues in business he shall renew the license annually, and no license shall *authorize merchandising out* of the county where issued, nor for a longer period than one year.

The third sub-section, providing for making the statement required, provides that all capital employed during the twelve months, etc., shall be deemed the taxable capital, upon which he shall pay to the ·clerk the same tax as levied upon real estate and other taxable property for *State and county purposes.* The 21st section provides for a judgment on the bond before the judge or chairman of the county court, to to be given for the specific or privilege tax fixed by law, that is the law of the State, and for the county.

Sec. 22 provides "That clerks of the county courts of the several counties of this State shall collect all taxes on merchants and privileges, as now provided by law, and pay the proceeds over to the Comptroller,

*provided* in *counties* where a privilege tax collector is provided by law, such privilege tax-collector shall collect the same.

We need not give all the provisions of the statute. It suffices to say, it is clear all the provisions down to the 50th section look to assessment and collection of revenue for State and county purposes, and have not the slightest reference to municipal revenues. And so we may add, several subsequent provisions to section 50 seem to contemplate only these purposes.

But at section 50, no doubt by way of amendment, this new subject is introduced as follows: *"Be it enacted,* That the clerk of the county court shall collect all taxes on privileges and merchants, and that the county trustee shall continue to act as the collector of taxes in accordance with the provisions of sections 1 and 2 of an act passed March 24, 1875, entitled An act more cheaply to collect the State and county and *municipal* revenues, *provided, however,* this section shall not apply to municipal corporations that under existing laws are authorized to collect their own taxes on property, privileges and polls."

It is evident from this section that a new subject is here introduced, and that in a most objectionable form, not in the way of an affirmative enactment, but by reference to all *existing* laws on the subject of collection of municipal revenues without any signification as to what was intended to be enacted.

By reference to the two sections referred to, it is provided the county trustee shall collect all taxes, State, municipal and county, provided, however "that

all privilege taxes shall be collected by the county
court clerk, who shall turn the same over on the first
day of each month ' to the State, county and muni-
cipal authorities respectively.   It is provided in the
50th section of the act of 1881, this section shall not
apply to municipal corporations that under *existing*
laws are authorized to collect their own taxes on
property, privileges and polls."   No one can tell from
this section alone, and it is no easy matter upon ex-
amination to see what municipalities are included in
the section.   It is clear by the act of 1875, priv-
ilege taxes fixed by municipalities were to be collected
by the clerks of county courts, but what municipali-
ties by their existing laws are entitled to collect their
own taxes on property, privileges and polls, has to be
determined by a general examination of the laws on
the subject, and possibly by the provisions of their
respective charters.   That municipal, county and State
taxes are not identical subjects, is shown by the Con-
stitution itself in definite terms, so that the bill enu-
merating revenue for State and county purposes cann)t
be held to include also municipal revenues.   By sec-
tion 29 of article 2, it is provided "The General
Assembly shall have power to authorize the several
counties and incorporated towns in this State to impose
taxes for county and corporation purposes respectively
in such manner as shall be prescribed by law, and all
property shall be taxed according to its value upon
the principles established in regard to State taxation.
This clearly distinguishes State from municipal taxation,
and provides that the former, as an independent sub-

Mayor and Aldermen of Knoxville *v.* Lewis.

ject, shall, however be made conformable to the rule in the other as fixed by the Constitution providing for State taxation.

That taxes for municipal purposes are not taxes levied for State or county purposes, and are not included under the terms of the title of this act seems too clear for argument or illustration. It was held by this court in the case of *Mayor and Aldermen of Nashville* v. *Towns*, 5 Sneed, 190–1, that the Legislature had no power to direct that taxes levied as county revenues in the county of Davidson, collected by the county court clerk from privileges exercised in the city of Nashville, should be paid over to the treasurer of the city for city purposes. This was held on the principle that the law authorizing its collection solely for the purpose of the county, the fund could not be diverted to another and different use by the authority of the State. The theory of this opinion conclusively recognizes the principle that a municipal purpose and county purpose are separate and distinct things, and so much more is a State and municipal purpose distinct the one from the other. All of our legislation on these subjects recognizes this distinction. Up to the act of 1875 municipal taxes were always levied and collected by municipal authority under the powers granted in the charters of these corporations. That act attempted to change the officers by whom they should be collected, but still treats them as distinct and separate subjects by providing that the municipal taxes in terms shall be so collected.

If this be correct, then it is beyond question the introduction into the act of 1881 of the provisions regulating the collection of municipal revenue, was the introduction of a subject not referred to in the title, but on the contrary excluded by the definite expression of the subject of the act, which is the assessment and collection of revenue for State and county purposes.

If a State tax is not a municipal tax or a county tax, not one, then it is clear the title does not provide for, but excludes, any provision for the collection of municipal taxes. The expression of these purposes necessarily excluded a different one.

We see, too, that the amendments which introduced this new subject are not only incongruous with the general provisions of the act, but that they serve in this case as a cover to all the evils intended to be prevented by the article of our Constitution under consideration. No member of the Legislature, except the mover of the amendment, probably understood the effect of section 50, or was expected to understand it. It had been prepared to conceal its purpose no doubt, and effectually did it.

We cannot sanction such a violation of the Constitution without rendering this provision a nullity, which we are not authorized to do. It is a most wholesome one, and easily complied with, and should be enforced by the court in the spirit in which it was intended to operate by the framers of the Constitution.

The result is, that we hold the act of 1881, under

which the clerk claims his right unconstitutional, and the plaintiff, under the agreed case, entitled to recover, and the judgment will be so entered. .

COOPER, J., dissents.